WILLIAM HERBERT, State Treasurer of the State of Delaware, *v.* THE BALTIMORE AND PHILADELPHIA RAILROAD COMPANY.

*Construction of Statute—Taxes due from Railroad—Length of Railroad Line.*

In the act of assembly in relation to the commutation of taxes due the State from the Delaware Western Railroad Company, the words "length of the Philadelphia, Wilmington & Baltimore Railroad within this State" mean the length of the main or trunk line, without reference to the lateral or branch lines.

(*May 2, 1888.*)

CASE STATED to be heard before all the judges.

William Herbert, State Treasurer of Delaware, sued the Baltimore & Philadelphia Railroad Company to obtain an interpretation of an act of the Leg., passed March 1, 1881, (Volume 16, Laws, 528,) in relation to the amount of taxes to be paid by defendant.

CASE STATED.

And now, to wit, this 21st day of December, A. D. 1887, it is hereby agreed by and between the parties to the above entitled cause, that the following case be stated, as if found by a special verdict, for the opinion of the Court:

I. The defendant is a corporation of the State of Delaware, duly constituted as such, in and by sundry acts of the General Assembly of said State.

II. That the plaintiff was on the twenty-fifth day of January, A. D. 1887, the State Treasurer of the State, and ever since has been.

III. That the General Assembly of said State, passed on the first day of March, A. D. 1881, An Act entitled "A Supplement to an act entitled 'An act to incorporate the purchasers of the Wil-

mington and Western Railroad,'" Section 4 of which is as follows, viz.:

SECTION 4. " That whenever the Delaware Western Railroad, authorized to be constructed by this act, or any branch or extension thereof, shall unite or become consolidated or connected with the railroad of any railroad company existing or organized under the laws of any other State so as to form a part of a continuous line of railway, the said Delaware Western Railroad Company, its assignee or assignees, lessee or lessees, shall pay to the Treasurer of this State, for the use of the State, a gross annual sum of money, payable in equal semi-annual payments on the first day of October and the first day of April in each and every year, in lieu of all other taxes, which gross annual sum shall bear the same proportion to the sum of forty thousand dollars, the amount now paid annually to this State by the Philadelphia, Wilmington and Baltimore Railroad Company in lieu of taxes, which the length of the Delaware Western Railroad in this State, so forming a part of a continuous line of railway, bears to the length of the Philadelphia, Wilmington and Baltimore Railroad within this State. _Provided_, that nothing in this Section shall be deemed, taken or construed to impair or limit the right of the Legislature, at any time hereafter, to determine and fix a different amount of money to be paid by said Delaware Western Railroad Company, its assignee or assignees, lessee or lessees, in lieu of other taxes."

IV. That the length of the Philadelphia, Wilmington and Baltimore Railroad in this State, forming part of a continuous line of railway, to wit, from the Pennsylvania State line to the Maryland State line, is twenty-three and six-tenths of a mile ; and the length of the Philadelphia, Wilmington and Baltimore Railroad from Delaware Junction to what was Rodney Station, is eleven miles and four-tenths of a mile, making a total of thirty-five miles of railway, which comprised all the railway of the said Philadelphia, Wilmington and Baltimore Railroad Company, in this State,

at the time of the passage of the said act on March 1st, A. D., 1881.

V. That the length of the Baltimore and Philadelphia Railroad, in this State, forming part of a continuous line of railway from the Pennsylvania State line to the Maryland State line, is twenty-one miles and three-tenths of a mile. The length of the old Delaware Western Railroad used in the above continuous line is one mile and three-tenths of a mile.

That this suit is instituted to determine what is the gross annual sum of money, payable in equal semi-annual payments, on the first day of October and the first day of April in each and every year, due from the said defendant to the said plaintiff.

VI. That the total length of the lines of railway now owned by the Philadelphia, Wilmington and Baltimore Railroad Company, in this State, is 48.95 miles, consisting of the following lines, to wit:

| | |
|---|---|
| Main line, from Pennsylvania State line to Maryland State line . . . . . . . . . . . . . . . . . . . . . . . . . | 23.60 miles. |
| Brandywine Branch . . . . . . . . . . . . . . . . . . . . | 2.16 " |
| Delaware Junction to Rodney Station . . . . . . . . . . . | 11.40 " |
| Newark and Delaware City . . . . . . . . . . . . . . . . | 11.79 " |
| Total . . . . . . . . . . . . . . . . . . . . . . . . . . | 48.95 miles. |

That the total length of line so owned by the said Philadelphia, Wilmington and Baltimore Railroad Company, at the date of the passage of the act of the General Assembly, passed April 11th, 1873, fixing the gross sum of Forty Thousand Dollars ($40,000.00) per annum, as the amount to be paid the State in lieu of taxes, was 23.60 miles, from the Pennsylvania State line, to the Maryland State line, aforesaid.

VII. That the total length of the line of railway now leased by

the Philadelphia, Wilmington and Baltimore Railroad Company, in the State of Delaware, is 97.82 miles, comprising the following lines, to wit:

Delaware Railroad, Main Line, Rodney to Delmar . . . . 83.83 miles.
Townsend Branch, Townsend to Maryland State line . . . 7.00 "
Smyrna Branch, Clayton to Smyrna . . . . . . . . . . . 1.27 "
Seaford Branch, Seaford to Maryland State line . . . . . . 5.72 "

          Total . . . . . . . . . . . . . . . . . . . . . 97.82 miles·

That the said Delaware Railroad was exempt from taxation by provisions of its charter, passed at Dover, June 20th, 1836, and by the various amendments thereto, for a period of fifty years from that date.

VIII. That the total length of lines of railway now operated by the Philadelphia, Wilmington and Baltimore Railroad Company, in the State of Delaware is 73.64 miles, comprising the following lines, to wit.:

Delaware and Chesapeake Railroad from Clayton to State
    line . . . . . . . . . . . . . . . . . . . . . . . . 12.00 miles.
Delaware, Maryland and Virginia Railroad, Harrington to
    Rehoboth . . . . . . . . . . . . . . . . . . . . . . 43.64 "
Delaware, Maryland and Virginia Railroad, from George-
    town to Maryland State line . . . . . . . . . . . . . 18.00 "

          Total . . . . . . . . . . . . . . . . . . . . . 73.64 miles.

That none of the said Railroads, mentioned in this paragraph, were operated by the said Philadelphia, Wilmington and Baltimore Railroad Company, on the said 11th day of April, 1873.

IX. And it is further agreed that the Court shall ascertain and determine what gross annual sum of money shall be so paid by the said defendant to the said plaintiff, and judgment shall be entered therefor for the plaintiff.

Witness our hands this 21st day of December, A. D., 1887.

JOHN BIGGS,
*Attorney-General.*

LEVI C. BIRD,
*Counsel for B. & P. R. R. Co.*

And now, to wit, this twenty-first day of December A. D., 1887, the foregoing case stated having been read and filed, it is considered by the Court that the questions of law therein contained ought to be decided before all the Judges; it is, therefore, on the joint application of the parties ordered by the Court, and they do hereby direct that the same shall be heard in the Court of Errors and Appeals, at the next term thereof.

J. P. COMEGYS, Ch. J.
JOHN W. HOUSTON, J.
JOHN H. PAYNTER, J.

*Charles B. Lore* and *John Biggs,* Attorney-General, for plaintiff:

"The uniform language of the English and American law is that all grants of privileges are to be liberally construed in favor of the public, and as against the grantees of the monopoly, franchise, or charter, to be strictly interpreted. Whatever is not unequivocally granted in such Acts is taken to have been withheld; all Acts of incorporation, and Acts extending the privileges of incorporated bodies, are to be taken most strongly against the companies."

Sedgwick, Stat. & Const. Law, p. 338. See also *Lees v. Manchester & Ashton Canal Co.,* 11 East, 652; *Scales v. Pickering,* 4 Bing., 452; *Dock Co. at Kingston-upon-Hull v. Browne,* 2 Barn. & Ad., 43; *Providence Bank v. Billings,* 29 U. S. 4 Pet., 514 (7 L. ed. 939); *Charles River Bridge v. Warren Bridge,* 36 U. S. 11 Pet.,

420; *Packer v. Sunbury & E. R. Co.*, 19 Pa., 211; *Mills v. St. Clair Co.*, 49 U. S. 8 How., 581 (12 L. ed. 1206).

In grants of franchises or privileges, any ambiguity must operate against the grantees, and in favor of the public, the maxim being *Verba chartarum fortius accippiuntur contra proferentem.*

*Re London & G. R. Co.*, 4 Nev. & Mann., 458; *Gildart v. Gladstone*, 11 East, 685; *Leeds & L. Canal Co., v. Hustler*, 1 Barn. & C., 424; *Kingston-upon-Hull Dock Co. v. La Marche*, 8 Barn. & C., 51; *Priestley v. Foulds*, 2 Scott, N. R., 205; *Portsmouth Floating Bridge Co. v. Nance*, 6 Scott, N. R., 823; *Stourbridge Canal Co. v. Wheeley*, 2 Barn. & Ad., 792; *Stockton & D. R. Co. v. Barrett,* 3 Scott, N. R., 803. (*Id.* note 340). See also *Com. v. Pittsburg & C. R. Co.*, 24 Pa. 159; *Beaty v. Knowler*, 29 U. S. 4 Pet. 152–168 (7 L. ed. 813); *Pa. R. Co. v. Canal Comrs.*, 21 Pa., 9; *Zack v. Pa. R. Co.*, 25 Pa., 394; *People v. Lambier*, 5 Denio, 1; *Coolidge v. Williams*, 4 Mass., 140.

*John K. Cowen* and *Levi C. Bird*, for defendant:

It is fair to suppose that those who were opposed to the grant by the Legislature of the amendment, which resulted in the building of the Delaware Western (now Baltimore and Philadelphia) Railroad, would have lost no opportunity in making the burden of taxation on the new road as onerous as they possibly could, and having knowledge of the exact length of the line of the P. W. & B. R. R., within the State, which, by the Act of March, 1881, was to be the standard of the amount of tax the new road was to pay to the State, they would have seen to it that the Act of March 1, 1881, would have said "the main line of the P. W. & B. R. R," if the Legislature had intended the main line only; or have said "so forming a part of a continuous line of railway from Philadelphia to Baltimore," if the Legislature had so intended; or, "so much of the line of the P. W. & B. R. R. within this State, commencing at the Pennsylvania State line and ending at the Maryland State line, comprising 23.60 miles of railroad," if the Legis-

lature had so intended.   But such is not the case, and there can be but one inference, that the Legislature intended to mean just what it said in the plainest possible language—" bears to the length of the P. W. &. B. R. R. within this State."

There is in this language no room for question or doubt.   It is plain, unequivocal and unmistakable.   It has but one meaning. It is susceptible of but one construction, and upon the plainest principles of law this Court will give to it the only construction that can be given, i. e., that the Legislature intended to say what they did say, and to make them say anything else would make them say what they did not intend to say.

*Martin v. Hunter*, 14 U. S. 1 Wheat., 326 (4 L. ed. 102) ; *Lord Tenterden's* opinion, 2 Barn. & Ad. 522 ; *Waller v. Harris*, 20 Wend., 561 ; 1 Kent, Com. 521.

COMEGYS, C. J.   At the biennial session of the legislature of 1873 an act was passed (Rev. Code, p. 44) by the first section of which the state treasurer was authorized and directed to accept from the Philadelphia, Wilmington & Baltimore Railroad Company, in that and succeeding years, until the legislature should direct otherwise, the annual sum of $27,000, to be paid in equal quarterly payments on the 1st day of July, October, January, and April, the first payment to be made on the then next 1st day of July, in lieu of all taxes which might thereafter become due from said company in each year, under any and all laws of this State, except the tax imposed by chapter 458, Vol. 12, Laws of Delaware. By the last section it is provided that the said company may also pay to the state treasurer, in semi-annual payments, the gross sum of $13,000, in lieu of that tax also.   The object of this act was to fix the definite annual sum of $40,000 as the tax to be paid, in parts and times as aforesaid, by the company to the state, so long as the legislature might choose, instead of the taxes to which it and other railroad companies were liable, under the operation of the act taxing railroad and canal companies, passed on the 8th day of March, 1869, (Rev. Code, p. 41,)

and the chapter aforesaid.  At the time of the passage of this act, the Philadelphia, Wilmington & Baltimore Railroad Company was the owner of a railroad running across the state, and having a length of 23.60 miles.  By an act passed at the January session of 1877 said company was allowed to unite with itself one other railroad, viz., that running from its main line at a point now called Delaware Junction, to New Castle ; and also that part of the old New Castle & Frenchtown Railroad between said New Castle and a place called Rodney Station.  The first mentioned road was built and owned by the New Castle & Wilmington Railroad Company ; the part last mentioned formed a section or portion of the road of the New Castle & Frenchtown Turnpike & Railroad Company.  Both those corporations are now by law merged into, or consolidated with, the Philadelphia, Wilmington & Baltimore Railroad Company, and have no longer any operating existence.  Their respective roads form, in fact, a branch of the aforesaid main line of said corporation, and are in length 11.40 miles.  On the 1st day of March, 1881, the legislature passed the act entitled " An act to incorporate the purchasers of the Wilmington & Western Railroad, (Volume 16, Laws, p. 526.)  This railroad had been built by a corporation of the state called " The Wilmington & Western Railroad Company," to maintain a railroad between Wilmington and Landenburg in Pennsylvania,—which failed,—and whose property had been sold by execution process and bought by the subscribers referred to in the title of the act.  The object of the act was to enable the new proprietors of the railroad property, as a corporation, to connect its road with that of a company then establishing a through railroad line between Baltimore and Philadelphia, so as to be a part of the said line, or of a continuous line between those cities.  By the fourth section of said act it is provided as follows : "That whenever the Delaware Western Railroad, authorized to be constructed by this act, or any branch or extension thereof, shall unite or become consolidated or connected with the railroad, or any railroad company, existing or organized under the laws of any other state,

so as to form a part of a continuous line of railway, the said Delaware Western Railroad Company, its assignee or assignees, lessee or lessees, shall pay to the treasurer of this state, for the use of the state, a gross annual sum of money payable in equal semi-annual payments on the 1st day of October and the 1st day of April in each and every year, in lieu of other taxes, which gross annual sum shall bear the same proportion to the sum of forty thousand dollars, the amount now paid annually to this state by the Philadelphia, Wilmington & Baltimore Railroad Company in lieu of taxes, which the length of the Delaware Western Railroad in this state, so forming a part of a continuous line of railway, bears to the length of the Philadelphia, Wilmington & Baltimore Railroad within this state; provided, that nothing in this section shall be deemed, taken, or construed to impair or limit the right of the legislature, at any time hereafter, to determine and fix a different amount of money to be paid by said Delaware Western Railroad Company, or assignee or assignees, lessee or lessees, in lieu of other taxes." Consolidation between the Delaware Western Railroad Company and the Baltimore & Philadelphia Railroad Company took place soon afterwards, whereby the aforesaid fourth section became operative ; and the question between the parties in this case is, how much money is to be annually paid to the state, by force of said section ?  The length in this state of the road of the Philadelphia, Wilmington & Baltimore Railroad Company at the time (11th April, 1873) of the passage of the act by which the legislature authorized the state treasurer to accept the sum of $40,000, " till otherwise ordered by the state, in lieu of the taxes for which it was liable under the act of August 11, 1864, and that of April 8, 1869, was as before stated, 23.60 miles.   That part of the Delaware Western road forming a section of the continuous line of railway contemplated by the section quoted is 21 3-10 miles.   The contention of the defendant is that although at the date of the passage ofı the act of 1873, by which an annual payment of $40,000 is permitted to be made to the state by the Philadelphia, Wilmington & Baltimore Railroad

Company in lieu of other taxes, the length of the road of that company was 23.60 miles, yet, the building of the Brandywine branch, of 2.16 miles, and the legislation of 1877, which effected the absorption and merger of the New Castle & Wilmington Railroad Company, and of that part of the road of the New Castle and Frenchtown Turnpike & Railroad Company between New Castle and what was then Rodney Station, practically added 13.56 miles to the road of the former; thus augmenting the length of the principal road by that number, aud making it 37.06 miles long. Thus considered, the annual sum to be paid by the defendant, by reason of its 21 3-10 miles of road, would be, roughly, about $25,000; whereas, estimating the length of the Philadelphia, Wilmington & Baltimore Railroad at 23.60 miles, it would be, roughly, $37,000— a difference of $12,000 in annual tax.

The question presented to the court, it is thus seen, though technically one of law, is in realty one of mixed law and fact; and the very nature of it, involving, as it does, inquiry into the mind, or intent, of the legislature which passed the act of 1881, is a very embarrassing one,—all the more so, because there is, perhaps, no example of legislation like this act; at least, none has been produced for our consideration. Nor has any definition been given to us of the length of a railroad, as that term is commonly used, in a technical sense even, by railroad officers. We are left to find out the meaning of the term, as employed in the legislation, the best way we can. In doing so, we naturally resort to analogy. We have several great highways in this State known as state roads; that between Wilmington and Dover forms part of one of them. There are at various places along the entire length of this great, or principal, thoroughfare, several roads (not cross-roads) issuing from it and extending into the adjacent country, some of which are very important highways. As, from time to time, we have to do, judicially, with some of these branches of the grand trunk road, we may properly say—such being a fact within our judicial knowledge, and, we may add, personal, also—that they are never described in

9

legal proceedings, or spoken of by witnesses, or in common speech, as part of such state road; nor can we conceive that any one would, in answer to an inquiry how long that part of the state road passing through the state is, from Wilmington to Dover, reckon up the length of every branch of such road on the line between those places, and add the sum to the 48 miles, more or less, such length is generally understood to be. Take also the case of one of the numerous creeks in this state. They all have affluents, or branches. In contemplating the length of a creek, does any one think of more than the distance from its source to its mouth in some larger water? The same is the case with a tree. It has branches which are part of its arboreal system, as lateral highways are of state roads systems, and affluents of creek systems. Are the branches or limbs of a tree ever in contemplation, in estimating its length, or, more correctly, height? Certainly we think not. With the foregoing analogies, it does appear that we have the way cleared for a satisfactory decision as to what was meant by the legislature, in the act of 1881, by the provision for tax of what is now the defendant company in this proceeding. And that conclusion is fortified by the language used in framing the above-quoted fourth section thereof. The company, in the event of consolidation, is to pay "a gross annual sum which shall bear the same proportion of the sum of forty thousand dollars, the amount now paid by the Philadelphia, Wilmington & Baltimore Railroad Company in lieu of taxes, which the length of the Delaware Western Railroad in this state, so forming a part of a continuous line of railway, bears to the length of the Philadelphia, Wilmington & Baltimore Railroad within this state." In view of the foregoing analogous interpretation of the term "length," when applied to the subjects mentioned, can it be fairly supposed that the legislature of 1873 intended to include branches, or lateral additions, that might be made or become the property of the Philadelphia, Wilmington & Baltimore Railroad Company, (none had been made or acquired at that time,) and treat them as coming within the commutation provision? We think

not; but rather that the annual payment was with reference to the then operated road of 23.60 miles in length. If this be reasonable, then it is a fair and just inference that, when the act of 1881 came to be passed, the length of road of the Philadelphia, Wilmington & Baltimore Company was, in the mind of the legislature, its trunk line alone, and not its Brandywine branch, nor the 11.40 miles addition, (beginning on its road at what is called Delaware Junction,) which are now treated, and were before the passage of that act, as part of the Delaware Railroad system; although, correctly speaking, that road extends no further than the former Rodney Station on the New Castle & Frenchtown Railroad, where the 11.40-miles branch of the Philadelphia, Wilmington & Baltimore Railroad ends. But it is not material, whether such addition was so treated or not. In our opinion, the gross annual sum of money payable in equal semi-annual payments on the 1st day of October and the 1st day of April in each and every year, due from the said defendant to the said plaintiff, is the sum of $36,101.69, or the proportion to $40,000 which the length of the Baltimore & Philadelphia Railroad of 21 3-10 miles bears to that of the Philadelphia, Wilmington & Baltimore Railroad Company of 23 60-100 miles, as contemplated, in our own opinion, by the legislature in the act of March 1, 1881.